UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re                                                           Chapter 7
**ARNOLD F. GONSALVES**,                                        Case No. 09-20091-JNF
    Debtor

~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is "Debtor's Expedited Motion for Determination that Severance Pay is Exempt under Section 522(d)(10)(C) and d(10)(E) [sic]," as amended. The Trustee objects to the Debtor's Motion through which Arnold F. Gonsalves (the "Debtor") seeks a determination that his claimed exemption in severance pay that he began receiving before the commencement of his case and that continues to receive is valid. The Court heard the Debtor's Motion and the Trustee's Objection on January 14, 2010 and took the matter under advisement. Both parties filed briefs. Neither party requested an evidentiary hearing, although the Chapter 7 Trustee raised an issue as to whether the Debtor had been offered employment with his employer's successor before executing the severance agreement from his former employer.

The issue presented is whether the Debtor's weekly severance payments are exempt under federal law. For the reason set forth below, the Court shall enter an order scheduling an evidentiary hearing.

1

## II. PROCEDURAL BACKGROUND

On January 4, 2010, approximately ten weeks after filing a voluntary Chapter 7 petition, the Debtor filed an "Expedited Motion for Determination that Severance Pay is Exempt under Section 522(d)(10)(C), d(10)(E)" [sic].  In his Motion, the Debtor revealed that he is receiving severance pay from a former employer and that the Chapter 7 Trustee had made demand for turnover of the payments. The Debtor attached the following to his Motion: 1) a letter dated July 22, 2009 from Commonwealth Wine & Spirits LLC, confirming an agreement between it and the Debtor, whereby the Debtor agree to accept severance payments in the form of salary for 38 weeks; and 2) the Trustee's demand letter dated January 4, 2010.

The letter from Commonwealth Wine & Spirits LLC, dated July 22, 2009, which the Debtor endorsed on June 15, 2009, provided, in pertinent part, the following:

> As you know, the decision has been made to conduct a reduction in force at Commonwealth Wine & Spirits, (the "Company") following and contingent upon its acquisition by Martignetti Companies. As a result, if you choose not accept [sic] the offer of employment with Martignetti Companies that was made to you on June 17, 2009 [sic], your employment with the Company will terminate on or before July 24, 2009 (the "Separation Date"). In the unlikely event the acquisition is not consummated, this offer will be null and void and the existing terms of your employment by [sic] will be unaffected.
>
> The purpose of this letter is to confirm the agreement between you and the Company concerning your severance arrangement, as follows:
>
> 1. **Final Salary and Vacation Pay**. Today you have received pay for the final payroll period of your employment through the Separation Date, to the extent not yet paid, as well as pay, at your final base rate of pay, for any vacation days you had earned, but not used, as of the Separation Date, determined in accordance with Company policy and as reflected on the books of the Company.

2. **Severance Benefits**. In consideration of your acceptance of this Agreement and subject to your meeting in full the conditions set forth in Section 3, the Company will provide you severance pay, at your final base rate of pay, for the period of thirty-eight (38) weeks following the Separation Date (the "Severance Pay").

3. **Conditions to Payment.** To be eligible to receive the Severance Pay, you must satisfy all of the following conditions:

> (a) You must sign this Agreement and return it to me no later than June 30, 2009;
>
> (b) You must not resign your employment with the Company before the Separation Date . . . .
>
> (d) After the Separation Date [July 24, 2009] but not later than July 15, 2009 you must sign and return to me the general release of claims attached to this letter as Exhibit A (the "Release"); . . .

4. **Form and Timing of Severance Pay.** The Severance Pay will be paid in the form of salary continuation in accordance with the Company's normal payroll practices. Payments will begin on the next regular pay day following the Separation Date, provided that you have satisfied all of the conditions described in Section 3.

5. **Withholding.** All payments made by the Company under this Agreement shall be reduced by any tax or other amounts required to be withheld by the Company under applicable law and all other deductions authorized by you.

***

If the terms of this Agreement are acceptable to you, please sign, date and return it to me no later than June 30, 2009. When you sign it, this letter will take effect as a legally-binding sealed agreement between you and the Company on the basis set forth above. To receive the Severance Pay described in Section 2 above, you must also satisfy the other conditions set out in Section 3 above, including the requirement that you sign and return to me the Release attached to this letter as Exhibit A, between July 10 and

July 15, 2009. . . .[1]

The Debtor filed a voluntary Chapter 7 petition on October 22, 2009. Initially, he did not disclose the severance payments on Schedule B - Personal Property or claim them as exempt on Schedule C - Property Claimed as Exempt. On Schedule I - Current Income of Individual Debtor(s), however, the Debtor set forth the following:

EMPLOYMENT

| | |
|---|---|
| Occupation | Severance Pay [sic] |
| Name of Employer | Commonwealth Wine & Spirits, Inc. [sic] |
| How long employed | [left blank] |
| Address of Employer | 20 Middlesex Road<br>Mansfield, MA 02408 |

The Debtor listed his current monthly gross wages, salary, and commissions as $3,822, subject to payroll deductions in the sum of $784.25. He also indicated that he was receiving unemployment benefits of $1,768. He listed monthly net income of $216.58.[2]

The Court initially denied the Motion for Determination because the Debtor failed to claim the severance payments as exempt on Schedule C. *Cf.* In re Church, No. 08-16202-JNF, 2009 WL 3754399 (Bankr. D. Mass. Nov. 3, 2009). The Debtor quickly corrected the oversight by filing 1) Amended Schedules B and C, 2) a "Motion to Amend Schedule B,

---

[1] If, as the document reflects, the Debtor executed it on June 15, 2009, his signature preceded the "offer of employment with Martignetti Companies that was made to . . . [him] . . . on June 17, 2009."

[2] On Official Form 22A, the Debtor listed annualized current monthly income of $58,461.96. The applicable median family income for purposes of determining whether the presumption of abuse arises is $66,437.00. *See* 11 U.S.C. § 707(b).

Schedule C," and 3) a "Motion for Reconsideration of Debtor's Motion for Determination that Severance Pay is Exempt under Section (D)(1)(C), D (1)(E)" [sic].  On Amended Schedule B - Personal Property, the Debtor listed "Severance Payments of $880 per week (38 weeks) by Commonwealth Wine and Spirits, Inc." [sic] in the total sum of $33,440, and, on Amended Schedule C - Property Claimed as Exempt, the Debtor claimed "Severance payments of $880 per week (38 weeks) by Commonwealth Wine and Spirits, Inc." [sic] as exempt pursuant to 11 U.S.C. § 522(d)(10)(C) or 11 U.S.C. § 522(d)(10)(E).

The Court granted the Debtor's Motion for Reconsideration and scheduled a hearing to consider the Motion for Determination for January 14, 2010.  The Debtor filed a brief in support of his Motion for Determination and the Chapter 7 Trustee filed his Objection together with a brief. The Debtor subsequently amended his Motion and filed an amended brief, as well as a Response to the Trustee's Objection.

### III. POSITIONS OF THE PARTIES

The Debtor maintains that the Severance Pay, which is payable "in the form of salary continuation in accordance with the Company's normal payroll practices" satisfies both the provision of 11 U.S.C. § 522(d)(10)(C) as it can be considered an "unemployment benefit" and the provisions of 11 U.S.C. § 522(d)(10)(E) as it can be considered a payment under a contract on account of length of service because it is reasonably necessary for the support of the debtor.  The Trustee contends otherwise, citing, *inter alia*, In re Bartholomew, 214 B.R. 322 (Bankr. S. D. Ohio 1997).

**IV. DISCUSSION**

    A. <u>Applicable Law</u>

Section 522(d)(10) of the Bankruptcy Code provides in relevant part the following:

> (d) The following property may be exempted under subsection (b)(2) of this section:
>
>> (10) The debtor's right to receive– . . .
>>
>>> (C) a disability, illness, or *unemployment benefit*;
>>> . . .
>>>
>>> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless– . . . .

11 U.S. C. § 522(d)(10)(C), (E) (emphasis added).

Several cases inform the Court's analysis of the applicability of § 522(d)(1)(C) and (E) to the facts of the case. The most recent, <u>In re Rock</u>, No. 04-83722, 2005 WL 2061045 (Bankr. C.D. Ill. April 25, 2005), involved a debtor who filed a voluntary petition under Chapter 7 while employed by Maytag Corporation. Approximately one month after filing his petition, the debtor executed a separation agreement with the company that entitled him to receive severance pay, and he subsequently received a check in the sum of approximately $6,800. The machinist union, of which the debtor presumably was a member, had negotiated the agreement with the company, prepetition, in anticipation of a plant closing. That agreement, which had a number of characteristics in common with the one present in the instant case, included severance pay based on seniority of service.

The debtor claimed the severance payment as exempt on Schedule C, citing 735 ILCS 5/12-1001(b), 5/12-1001(g)(1) and 5/12-1001(g)(3).  He contended that the payment was in the nature of an unemployment benefit.  In re Rock, 2005 WL 2061045 at *2.  The debtor also filed a motion for a finding that the severance payment was not property of the estate as an ERISA qualified plan or spendthrift trust, adding that the payment was a postpetition asset, not subject to administration by the Chapter 7 trustee.  Id.

The court began its discussion by examining whether the severance payment was property of the estate under 11 U.S.C. § 541(a), referencing the exclusion from property of the estate set forth in 11 U.S.C.§ 541(c)(2).  It stated that "[t]he Agreement contains no language indicating that the severance pay obligation was intended to be in the nature of a trust and it does not contain an anti-alienation provision.  Thus, the court concluded that the payment was property of the estate, citing In re Ryerson, 739 F.2d 1423 (9th Cir. 1984); In re LaSpina, 304 B.R. 814  (Bankr. S.D. Ohio 2004); and In re Dennison, 84 B.R. 846 (Bankr. S.D. Fla. 1988). *See* In re Rock, 2005 WL 2061045 at *3.

Having determined that the severance payment was property of the estate, the court framed the issue as whether the payment was exempt under 735 ILCS 5/12-1001(g)(3), which provides an exemption for a debtor's right to receive "a disability, illness, or unemployment benefit."  Id.   The court stated:

> It is clear that the Legislature intended to draw a distinction between "unemployment compensation" referred to in paragraph (g)(1) and an "unemployment benefit." This Court construes the term "unemployment compensation" to refer to a payment through a government mandated program such as that administered pursuant to the Illinois Unemployment Insurance Act, 820 ILCS 405/100 et seq. Comparatively, the term

7

> "unemployment benefit" is a more general term that refers to a payment on account of or attributable to the status of being unemployed or having lost one's job. With no limitation on the source of the benefit contained in the statute, it is proper to construe the term broadly to include benefits derived from private contractual arrangements such as an unemployment benefit provided in an employment agreement.

2008 WL 2061045 at *4. The court also noted that "the parallel Bankruptcy Code provision found at 11 U.S.C. § 522(d)(10) [identical to 735 ILCS 5/12-1001(g)(3)] has been construed as intended to exempt benefits that are 'akin to future earnings' of the debtor." Id. at *3 n.3. It also noted that "one court has held that paragraph (g) of the Illinois exemption statute also exempts payments that are akin to future earnings." Id. at *3 n.3 (citing In re Haynes, 146 B.R. 779, 780-81 (Bankr. S.D. Ill.1992)).

>   The court observed:
>
>   The difficulty here is that the DEBTOR'S right to severance pay is not conditioned upon his being unemployed for any length of time or at all. He would have been entitled to receive the severance pay even if he had a new job waiting for him when he walked out the door at MAYTAG for the last time. In this Court's view, however, whether severance pay is an "unemployment benefit" should not be determined idiosyncratically, employee by employee, based on each person's job prospects. Instead, the severance pay at issue here, available to similarly situated blue collar employees, should be accorded a unitary construction common to all such employees. In this regard, it is necessary to look to the intent of the parties to the Agreement.

In re Rock, 2005 WL 2061045 at *4 (emphasis in original). Because of the closing of the Maytag plant and the "special Agreement" negotiated by the union to assist displaced workers who lost their jobs, the court concluded that the severance pay at issue was in the nature of an unemployment benefit under 735 ILCS 5/12-1001(g)(3) and thus fully exempt. Id. at *4. The court added: "This holding should not be construed as a general

8

determination that severance pay will always constitute an unemployment benefit. The issue is one to be decided on a case-by-case basis on the facts of each case." Id. at *4 n. 5.

In LaSpina, 304 B.R. 814 (Banakr. S.D. Ohio 2004), the court considered whether various payments, including a gross severance payment of $30,000 and two salary continuation payments totaling approximately $5,000, received by the debtor, who had been employed as the Director of Finance at GAP, Inc., were exempt. The debtor filed a Chapter 7 petition before receiving the payments. Like the court, in Rock, the court began its analysis with 11 U.S.C. § 541. It stated:

> [C]ourts have limited the scope of any exclusions [from property of the estate], such as for services performed post petition, governed by Section 541(a)(6) of the Code. Typically, funds are not subject to the post petition services exclusion, unless they accrue as the result of actual services performed post petition, or are conditioned upon the performance of continued services post petition.
>
> With reference to post petition payments related to contractual relationships, such as employment, the focus has been on whether the payments are, ". . . 'sufficiently rooted in the pre bankruptcy past' as to be included within the bankruptcy estate."

304 B.R. at 818-19 (citations omitted).

While commenting on the debtor's failure to turn over payments to the trustee, the court concluded that the payments made to the debtor postpetition were firmly rooted in the prepetition employment relationship between the debtor and GAP, Inc. and therefore granted the trustee's turnover request. Id. at 820.

The court in In re Bartholomew, 214 B.R. 322 (Bankr. S.D. Ohio 1997), considered the issue of whether a debtor could exempt a lump sum payment of approximately $125,000

9

which was based upon 52 weeks of pay at his current monthly salary plus benefit costs. According to the court, the salary continuation portion of the severance payment was not part of the employer's benefits handbook or its retirement plan, but was offered only to the debtor and certain other employees whose jobs were being eliminated.  The debtor filed a Chapter 7 petition on the same day he executed a letter accepting his employer's severance proposal, receiving the lump sum payment approximately two weeks after filing his petition.  According to the court, "[t]he portions of that payment attributable to wages or vacation pay are not property of the bankruptcy estate to the extent such amounts represent postpetition wages or vacation pay, but are property of the estate as they relate to prepetition wages or vacation pay." 214 B.R. at 324-25.

With respect to the debtor's claimed exemption in salary continuation benefits, which he received in a lump sum, the court, distinguishing In re Phillips, 45 B.R. 529 (Bankr. N.D. Ohio 1984), and In re Bell, 80 B.R. 97 (Bankr. N.D. Ohio 1987), concluded:

> The portion of the Severance Payment attributable to the salary continuation benefit had two components. It was to assist the debtor in supporting himself while he located another job because Columbia [his employer] recognized that a long-time employee over the age of fifty at the time his job was eliminated could have difficulty finding suitable reemployment at a comparable wage. The payment also was to settle by a waiver of rights any claim the debtor might have against Columbia under the age discrimination laws. The amounts of the payment are not apportioned and no evidence of proper apportion was introduced.
>
> Even if an apportion had been shown, the debtor's claim of exemption is not sustainable. Ohio Revised Code § 2329.66(A)(10)(b) does not provide an exemption for the debtor's right to the salary continuation benefit. Neither the language of the statute nor the case law relied upon support the claim of emption [sic]. The payment did not arise "in connection with a pension, annuity or similar plan or contract" and was not a right "on account of

>illness, disability, death, age, or length of service." In sum, Ohio Revised Code § 2329.66(A)(10)(b) does not provide authority to remove the right to this payment from the bankruptcy estate.

In re Bartholomew, 214 B.R. at 326-27.

B. Analysis

Based upon the case law discussed above, the Court finds that the decision in In re Rock, No. 04-83722, 2005 WL 2061045 (Bankr. D.D. Ill. April 25, 2005), is the most instructive. Not only is the provision of the Illinois statute identical to section 522(d)(10)(C), the Debtor's schedules and Chapter 7 Statement of Current Monthly Income indicate that he is in need of the "fresh start" afforded honest and unfortunate debtors. *See* Grogan v. Garner, 498 U.S. 279, 286-87 (1991) (discussing the fresh start policy of the Bankruptcy Code). Nevertheless, the existing record contains insufficient facts for this Court to determine whether the Debtor's severance payments are exempt from property of the estate pursuant to 11 U.S.C. § 522(d)(10)(C). While some of the factors set forth in In re Rock are present, others may not be. While the Debtor's entitlement to the severance payment is linked to his "final base rate of pay, for the period of thirty-eight (38) weeks following the Separation Date," this Court has no evidence (as opposed to unsubstantiated statements by counsel) as to the following:

> 1) the Debtor's job description at Commonwealth Wine & Spirits LLC;
> 2) the length of the Debtor's employment at Commonwealth Wine & Spirits LLC;
> 3) whether the Debtor was or was not offered employment with Martignetti Companies on June 17, 2009;
> 4) whether employees similarly situated to the Debtor received the same offer calculated the same way as the Debtor's severance pay was calculated; and

11

5) the reason the letter, which is dated July 22, 2009, references an employment offer from Martignetti Companies made on June 17, 2009, when the letter also provides that the Debtor was to sign, date and return it no later than June 30, 2009, which the Debtor did on June 15, 2009.

Except for the decision in In re Rock which carves out a limited exception, the case law discussed above is far from favorable to the Debtor, although, for example, In re Bartholomew was decided under Ohio law. In view of the Debtor's loss of employment and the present unemployment rate in the Commonwealth of Massachusetts, the Court finds that the decision in Rock strikes a compelling balance, although the Court also agrees with the Illinois bankruptcy court that the issue of whether severance can constitute an "unemployment benefit" must be determined on a case-by-case basis.

## IV. CONCLUSION

In view of the foregoing, the Court shall issue a pretrial order and schedule the Debtor's Motion and the Trustee's Objection for an evidentiary hearing.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 23, 2010
cc: Michael Van Dam, Esq., Ann Brennan, Esq., Stephen E. Shamban, Esq.